IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUDITH BIELEWICZ, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 10-1176 |
| | ) |
| | ) Judge Terrence F. McVerry |
| | ) Magistrate Judge Maureen P. Kelly |
| PENN-TRAFFORD SCHOOL DISTRICT; | ) |
| SCOTT INGLESE, both in his individual | ) |
| capacity and as principal of Penn-Trafford | ) |
| High School; DEBORAH KOLONAY, | ) |
| both in her individual capacity and as | ) |
| Superintendent of Penn-Trafford School | ) |
| District; HARRY SMITH, both in his | ) |
| individual capacity and as assistant | ) |
| superintendent of Penn-Trafford School | ) |
| District, | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**KELLY, Magistrate Judge**

Plaintiff, Judith Bielewicz ("Bielewicz"), a teacher in the Penn-Trafford School District,

initiated this action on September 3, 2010, by the filing of a Complaint in Civil Action No. 10-

1176 (the "Complaint") against Defendants Penn-Trafford School District ("the School

District"), Scott Inglese ("Inglese"), the Principal of Penn-Trafford High School, Deborah

Kolonay ("Kolonay"), the Superintendent of Penn-Trafford High School, and Harry Smith

("Smith"), the Assistant Superintendent of Penn-Trafford High School (collectively,

"Defendants"), after she was given an unsatisfactory teacher rating for the 2008-2009 school

year, placed on a performance improvement plan for the 2009 – 2010 school year and,

ultimately, suspended for allegedly failing to adhere to the improvement plan. In the Complaint, Bielewicz asserts two claims; first, a claim that her rights under the First Amendment of the United States Constitution have been violated; and, second, a claim arising out of an alleged violation of the Pennsylvania Whistleblower Law. [ECF No. 1].

Early in the litigation, Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [ECF No. 6]. Chief Magistrate Judge Lenihan issued a Report and Recommendation, recommending that Plaintiff's claims for punitive damages be dismissed, but that the Motion to Dismiss be denied in all other respects. [ECF No. 10]. Judge McVerry subsequently entered an order adopting the Report and Recommendation [ECF No. 12].

Following discovery, Defendants moved for summary judgment on Plaintiff's two remaining claims: First Amendment retaliation and violation of the Whistleblower Law. [ECF Nos. 27-28]. Plaintiff filed a Response and Brief in Opposition to Defendants' Motion for Summary Judgment. [ECF Nos. 31, 33]. The Motion for Summary Judgment is now ripe for review.

For the reasons that follow, it is respectfully recommended that Defendants' Motion for Summary Judgment [ECF No. 27] be granted as to the First Amendment retaliation claim and that the Court decline to exercise supplemental jurisdiction as to the pendant state law claim for violation of the Pennsylvania Whistleblower Law.

## I.    FACTUAL BACKGROUND

Bielewicz was hired in 2002 by the School District to teach Spanish at Penn-Trafford High School. [ECF No. 1, ¶ 7]. Bielewicz contends that during the 2008 – 2009 school year, she had a female student in her Spanish III Honors class who had a fifty-two percent (52%)

average and was due to receive a failing grade for the third quarter.[1]  [ECF No. 1, ¶ 9, ECF No.
31, p. 3, A. 118 – 127].  Bielewicz asserts that the student had not done well the entire year [ECF
No. 1, ¶ 10].  The student's parents called Bielewicz and school administrators to complain about
the student's grades.  [ECF No.1, ¶ 11].  Soon thereafter, the student was transferred from
Bielewicz's class and placed in another Spanish class, with two weeks left in the third quarter.
[ECF No. 1, ¶ 12].  Bielewicz alleges that shortly thereafter she learned that the student was
showing a grade of 100 percent in the new Spanish class.  [ECF No. 1, ¶ 13].

Upon learning of the removal of the student from her class on March 6, 2009,
Bielewicz went to see Defendant Inglese in his capacity as principal, and questioned the
propriety of the decision to remove the student from her class, as well as the fact that the
student's grade was now showing 100 percent during the third quarter.  [ECF No. 1, ¶ 14].
Bielewicz complained that the transfer was contrary to school policy.  [ECF No. 1, ¶ 12].

On March 10, 2009, Inglese met with Bielewicz and told her that there were a number of
incidents that he needed to address with her.  Inglese addressed Bielewicz's punctuality,
unwillingness to help struggling students, missing open house days and issues with parents.  He
then informed Bielewicz that she was going to receive a seventy-two percent (72%) rating for the
2008 – 2009 school year and would be placed on a performance improvement plan for the next
school year.  [ECF No. 34-1, pp. 1067-1068].  Additional performance issues were addressed
with Bielewicz in April 2009, and Bielewicz was placed on the performance plan for the 2009-
2010 academic year.  [ECF No. 34-1, pp. 1072-1074].  The plan included requirements that she
enter grades on a weekly basis [ECF No. 29-3, pp. 56-50].   Ultimately, on March 17, 2010,
Bielewicz was suspended for failing to comply with the requirements of the performance

---

[1] In paragraph 9 of the Complaint, Plaintiff refers to the "2009-2010" school year.  Based on the record, it appears
that this is an error.  It should be the 2008-2009 school year as referenced throughout the record.

improvement plan, for attempting to conceal the fact that she had not entered grades on a weekly basis as required and, further, for violating the School District's internet policy, by using a school district computer for personal matters. [ECF No. 1, ¶ 17]. [ECF No. 29-3, pp. 57-64].

Bielewicz claims that Inglese retaliated against her for complaining about the student transfer by lowering her teacher rating for the 2008-09 school year which, in turn, resulted in an "Improvement Plan" being imposed upon her for the following school year. [ECF No. 1, ¶ 15]. She also contends that Defendants retaliated against her by suspending her in March 2010, based on her "alleged or de minimus failings to adhere to the letter of the Improvement Plan," and by assigning her to teach level 1 Spanish classes rather than the advanced classes she previously had taught.[2] [ECF No. 1, ¶¶ 17, 18].

## II.     STANDARD OF REVIEW

Summary judgment is warranted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c). The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Public Service Electric & Gas Company, 364 F.3d 135, 140 (3d Cir. 2004). When the moving party has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c)(2). The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion. There must be enough evidence with respect to a particular issue to

---

[2] It appears from the record that following the initiation of this action, Bielewicz's employment with the School District was terminated. Bielewicz did not amend the Complaint to include a claim for wrongful termination. As such, this Court does not give any consideration to the termination.

enable a reasonable jury to find in favor of the non-moving party.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).  <u>See</u> <u>McGreevy v. Stroup</u>, 413 F.3d 359, 363-64 (3d Cir. 2005).  In evaluating the evidence at the summary judgment stage, the court must review the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. <u>Matreale v. New Jersey Dep't of Military & Veterans Affairs</u>, 487 F.3d 150, 152 (3d Cir. 2007).

## III.   DISCUSSION

### A.  First Amendment Retaliation Claim

Defendants contend that summary judgment should be entered in their favor as to Bielewicz's First Amendment retaliation claims because she was not speaking as a public citizen and, therefore, Bielewicz's speech is not constitutionally protected.  Defendants argue that when Bielewicz first spoke to Inglese on March 6, 2009, at the conclusion of the school day, about the student's removal from her class, she was speaking to him in her official capacity as a teacher and her speech was directed at him in his capacity as her supervisor.  The speech was solely an internal communication – teacher to principal – within the scope of Bielewicz's employment, and relative to a teaching issue as to one of Bielewicz's students.  Defendants contend that Bielewicz's discussion with Inglese about the student transfer was "on the job, about the job" in the high school.  Bielewicz did not use any avenue, other than in the high school workplace, to communicate her concern regarding the removal of the student from her Spanish class.

In opposing Defendants' Motion for Summary Judgment, Bielewicz argues her speech was constitutionally protected.  She contends that she was a public employee speaking on a matter of public concern.  Bielewicz asserts that because her job duties as a teacher include reporting violations of school policy to the administration, her speech involved a matter of public concern and was protected.  The Court disagrees.

To advance a First Amendment retaliation claim beyond summary judgment, a plaintiff must identify sufficient facts to establish: "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006). If Plaintiff identifies such facts, "the burden shifts to defendants to demonstrate that the same action would occur if the speech had not occurred." Gorum v. Sessoms, 561 F 3d 179, 184 (3d Cir. 2009).

Whether or not the statement at issue is protected in the first instance is a question of law[3] and will be found where: (1) in making the statement, the employee spoke as a citizen; (2) the statement involved a matter of public concern; and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement he made. Id., quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). See Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968) ("[t]he problem in any case is to arrive at a balance between the interest of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees").

The initial question to be addressed in considering the pending Motion for Summary Judgment is whether Bielewicz engaged in speech protected by the First Amendment. Specifically, when Bielewicz spoke with Inglese, the principal of Penn-Trafford High School and her supervisor, on March 6, 2009, regarding a student's transfer from her class after parent complaints, was she speaking as a public citizen?

---

[3] The inquiry into the protected status of the speech, including the determination whether the employee has spoken pursuant to official duties is to be resolved by the district court and not the trier of fact. Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1202-03 (10th Cir. 2007); See also, Guarnieri v. Duryea Borough, 441 F. App'x 74, 2011 WL 3288377 *1 (3d Cir. 2011) (noting the United States Supreme Court's guidance that the issue of whether speech addresses matters of public concern is a question of law for the court.)

In the Complaint, Bielewicz identifies one oral communication that she made to Inglese on March 6, 2006.   According to Bielewicz, upon learning that a student had been removed from her Spanish III Honors Class and placed in another Spanish class with a different teacher, she "spoke to the principal, Defendant Inglese, and questioned the propriety of the decision to remove the student." [ECF No. 1, ¶ 14].

In considering Bielewicz's communication to Inglese, the focus of the inquiry is not on the content of the speech but the role of the speaker.  Weintraub v. Board of Educ. Of City School Dist. of City of New York, 593 F.3d, 196, 204 (2d Cir. 2010).   The United States Supreme Court in Garcetti defined speech made "pursuant to" a public employee's duties as speech that owes its existence to a public employee's professional responsibilities.  Garcetti 547 U.S. at 421.  In Weintraub, a public school teacher's filing of a grievance regarding school administration's failure to discipline a disruptive student was found to have been speech pursuant to his official duties and unprotected by the First Amendment.  The United States Court of Appeals for the Second Circuit found the grievance to be "'part and parcel of his concerns' about his ability to properly execute his duties…." Weintraub, 593 F.3d at 203 (quoting Williams v. Dallas Indep. Sch. Dist., 480 F. 3d 689, 694 (5th Cir. 2007).

In the case at issue, it is clear from the record that Bielewicz's communication to Inglese was based on her knowledge and experience as a teacher of a particular student.

It is undisputed that Bielewicz's official duties as a teacher in the School District included teaching Spanish, mastering the material in the curriculum, grading the students' work, and monitoring student progress within the curriculum. [ECF No. 29-1, A.3 – A.4].  As to the progress of the student at issue, it is undisputed there were a series of heated e-mails and communications between the student's mother, Bielewicz and Inglese regarding Bielewicz's

interaction with the student in the classroom. [ECF No. 29-1, A.9-A.12, A.118-A.122].

Specifically, the student's mother repeatedly complained that Bielewicz, in her capacity as

Spanish teacher, was bullying the student, unfair to the student, grading the student differently

than other students, had accused the student of cheating, and refused or was unwilling to help the

student. [ECF No. 29-1, A.13-A.14].

It is also undisputed that this conflict culminated in Inglese, as principal, removing the

female student from Bielewicz's class on the morning of March 6, 2009, based on his

determination that it was in the best interests of the teacher and the student. [ECF No. 29-2,

A.123]. After learning of Inglese's decision to withdraw the student from her class, Bielewicz

approached Inglese at the end of the day on March 6, 2009. [ECF No. 29-1, A.14]. She met

with Inglese in his office, as her supervisor and in his capacity as the principal of her building.

[ECF No. 29-1, A.5-A.6]. Bielewicz testified in her deposition that she brought two concerns to

Inglese – the withdrawal of the student and a change in the student's grade. [ECF No. 29-1,

A.16-A.17].

Based on the undisputed facts, it is clear that Bielewicz's complaint to Inglese at the end

of school on March 6, 2009, was "part and parcel" of her job as a teacher and addressed her

concern over the process of removal a failing student from her classroom. Her speech owed its

existence solely to her role as a teacher i.e., to her professional responsibilities. Garcetti, 547

U.S. at 421.

It is clear from the record that one of a teacher's core duties is assessing the academic

progress of students. Bielewicz' complaint to Inglese on March 6, 2009, was an internal

communication "undertaken in the course of performing" her primary employment responsibility

of teaching. See, e.g. Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192 (10th Cir.

2007) (holding that teachers spoke pursuant to their job duties when they discussed the school academy's expectations regarding student behavior, curriculum, pedagogy, and classroom related expenditures.). Based on the record, this Court finds that Bielewicz's complaint to Inglese was derived from her duty as a teacher, not as a public citizen.

Courts have consistently recognized that where "public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S. at 421. Statements relate to an employee's official duties when they derive from "special knowledge" or "experience" acquired on the job. Brown v. Montgomery County, 470 F. App'x 87 (3d Cir. 2012) (quoting Foraker v. Chaffinich, 501 F.3d 231 (3d Cir. 2007), *abrogated in part by* Duryea v. Guarnieri, ___ U.S. ___, 131 S. Ct. 2488, 180 L.Ed.2d 408 (2011)); see also Reilly v. Atl. City, 532 F.3d 216, 226 (3d Cir. 2008) ("[T]he First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities." (internal citations omitted)).

In the case at issue, Bielewicz's complaint was communicated directly to her principal and supervisor, Defendant Inglese, at the end of the school day. As was the case in Garcetti, Bielewicz's speech was "on the job, about the job." Furthermore, there is no evidence in the record that Bielewicz ever took her complaint regarding the student removal from her class to the School Board or to any other entity.

Consistent with the decision of the United States Supreme Court in Garcetti, the undisputed facts in the case at issue establish that Bielewicz's communication to her principal about a student's transfer was within Bielewicz's job duties and responsibilities as a teacher, and the complaint at issue falls within a practical understanding of her official duties. As a result, the

communication from Bielewicz to Inglese was not private speech entitled to the protection of the First Amendment.  As such, Bielewicz cannot establish even the first required element of a First Amendment retaliation claim.  Accordingly, it is recommended that Defendants' Motion for Summary Judgment as to Plaintiff's First Amendment retaliation claim be granted.

### B.  PENNSYLVANIA WHISTLEBLOWER LAW CLAIM

Bielewicz has also brought a claim under the Pennsylvania Whistleblower Law, 43 P.S. § 1421 et seq.  Defendants seek summary judgment on this claim on the grounds that it is time-barred by the applicable 180 day statute of limitations.  In the alternative, Defendants seek summary judgment because Bielewicz cannot demonstrate that she reported an instance of "wrongdoing" by the School District or by a School District employee to any authority, as is required under the statute, and cannot establish a prima facie case of retaliatory termination under the Whistleblower Law.  Bielewicz opposes the Motion for Summary Judgment on the grounds that due to the ongoing nature of retaliation, the claim is not time barred.  Further, Bielewicz contends that there is sufficient evidence to establish the requisite elements of a violation of the Pennsylvania Whistleblower Law to survive summary judgment.

Having found that Plaintiff is unable to sustain her claim of First Amendment retaliation against the Defendants, it appears that only the state law claim for violation of the Pennsylvania Whistleblower Law remains.   Where all claims over which the Court has original jurisdiction have been dismissed, however, the district court may decline to exercise supplemental jurisdiction over the remaining claims.  28 U.S.C. § 1367(c)(3).  Although declining to exercise jurisdiction is within the discretion of the district court, the United States Court of Appeals for the Third Circuit has held that, absent extraordinary circumstances, pendent jurisdiction should be declined where the federal claims are no longer viable.  Shaffer v. Albert Gallatin Area

10

School District, 730 F.2d 910, 912 (3d Cir. 1984) (citations omitted).  See, also, Annulli v. Panikkar, 200 F.3d 189, 202 (3d Cir. 1999), overruled on other grounds by, Rotella v. Wood, 528 U.S. 549 (2000).

There do not appear to be any extraordinary circumstances surrounding this case which would warrant the exercise of supplemental jurisdiction over Bielewicz's remaining state law claim and, thus, the Court should decline to do so.[4] It is recommended that the state law claim be dismissed pursuant to 28 U.S.C. § 1367(c)(3), albeit without prejudice to Plaintiff's ability to re-file this claim in state court.  Also, the dismissal of Plaintiff's state law claim should not work to Plaintiff's disadvantage.  See, 28 U.S.C. § 1367(d)(providing for at least a thirty-day tolling of any applicable statute of limitations after the claim is dismissed so as to allow Plaintiff time to re-file state law claims in state court).

## IV.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Defendants' Motion for Summary Judgment [ECF No. 27] be granted as to Plaintiff's First Amendment retaliation claim.  As a result, it is further recommended this Court decline to exercise supplemental jurisdiction over the pendent state law claim of violation of the Pennsylvania Whistleblower Law.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.  Failure to timely file objections will waive the right

---

[4] In light of this Court's declination of pendent jurisdiction, this Court does not address the merits of Defendants' Motion for Summary Judgment as to the Pennsylvania Whistleblower Law claim.

to appeal.  <u>Brightwell v. Lehman,</u> 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing

objections may file their response to the objections within fourteen (14) days thereafter in

accordance with Local Civil Rule 72.D.2.


Respectfully submitted,


<u>/s/ MAUREEN P. KELLY</u>
United States Magistrate Judge


Dated: January 29, 2013


cc:    The Honorable Terrence F. McVerry
      United States District Judge

      All Counsel of Record Via CM-ECF